[No. A025995. First Dist., Div. Three. May 30, 1986.]

AVIOINTERIORS SPA, Plaintiff, Cross-defendant and Appellant, v.
WORLD AIRWAYS, INC., et al.,
Defendants, Cross-complainants and Respondents.

**COUNSEL**

Ralph A. Lombardi, H. Christopher Covington and Hardin, Cook, Loper, Engel & Bergez for Plaintiff, Cross-defendant and Appellant.

William A. Quinby, James C. Martin, Kathy M. Banke and Crosby, Heafy, Roach & May for Defendants, Cross-complainants and Respondents.

**OPINION**

**MERRILL, J.**—Appellant Aviointeriors SpA (Aviointeriors) appeals from an adverse judgment construing portions of a written contract in favor of respondent World Airways, Inc. (World). We affirm the judgment.

I

On March 25, 1977, Aviointeriors, by its representative, John R. Brand, and World Airways, by its then senior vice president, William R. Boyd, entered into a written contract (the Purchase Agreement) for the manufacture and sale by Aviointeriors and the purchase by World of three shipsets of aircraft seats for use in DC-10 aircraft at an agreed price of $167,998 per shipset.

Pursuant to the agreement, Aviointeriors manufactured and delivered to World the three shipsets as well as certain spare parts requested by World. The total value of the goods delivered to World was $554,834.06, of which $366,753.60 has been paid. Due to the dispute which is the subject of World's cross-complaint, World has withheld from Aviointeriors the sum of $178,080.46 since July 1, 1978.

On April 19, 1977, World and Aviointeriors executed a written letter agreement (the Option Agreement) wherein Aviointeriors granted to World an option to purchase up to three additional shipsets of seats at a purchase price of no more than $176,398 per shipset.

World's exercise of this option was tied to its exercise of an option to buy three additional DC-10 aircraft from McDonnell Douglas Corporation under an option agreement entered into between World and McDonnell Douglas on March 16, 1977.

Mr. Boyd and Mr. Brand were the primary representatives for World and Aviointeriors, respectively, in negotiating the Option Agreement. Mr. Boyd drafted and signed the agreement. One copy was signed by Mr. Brand; an officer of Aviointeriors signed another copy.

Paragraph two of the Option Agreement provided as follows: "World's option to purchase the three additional DC-10-30CF aircraft presently provides that World must exercise the option on or before January 2, 1978, with the aircraft to be delivered in March, April, and May of 1979. It is understood that in the event World exercises its option to purchase up to three additional shipsets of seats for any or all of the option aircraft by written notice given not later than 60 days after the exercise of its option to buy the aircraft; provided, however, that in no event will such option exercise be later than 9 months prior to the date of delivery of the first of these option aircraft."

At the time World entered into the agreement with Aviointeriors in April of 1977, the McDonnell Douglas agreement required that World exercise its option on or before January 2, 1978. However, McDonnell Douglas subsequently extended the option date and World exercised the extended option to purchase three additional DC-10 aircraft on March 7, 1978.

On March 16, 1978, World purported to exercise the Option Agreement with Aviointeriors by the issuance of purchase orders for three additional shipsets of aircraft seats.

Aviointeriors took the position that the option had not been exercised in a timely fashion and refused to sell the shipsets to World on the terms provided by the Option Agreement. World thereupon purchased three shipsets from UOP, Inc. at an additional total net cost of $193,692.

## II

Aviointeriors filed a complaint against World for breach of contract. The complaint alleged that World had breached the March 1977 Purchase Agreement between the parties by failing to pay Aviointeriors the balance due under the agreement, $188,080.46.[1]

---

[1] The parties later stipulated that the amount due was $178,080.46.

World filed an answer consisting of a general denial and an affirmative defense of set off pursuant to Code of Civil Procedure section 431.70.[2] World alleged that Aviointeriors owed World a sum in excess of the demand for money contained in Aviointeriors' complaint and, therefore, Aviointeriors' demand had been paid in full. At the same time, World filed a cross-complaint seeking damages for breach of contract and conversion. World first alleged that Aviointeriors had breached the April 1977 Option Agreement between the parties by failing to honor World's exercise of its right to purchase three additional shipsets under the agreement. World contended that, as a result of this breach, it was required to purchase equivalent seats from another manufacturer at approximately $213,642[3] over the option price agreed to by the parties.

Aviointeriors' answer to World's cross-complaint consisted of a general denial, and the affirmative defense that Aviointeriors was excused from performance under the Option Agreement because World had failed to timely exercise the option.

The conversion claim set forth in World's cross-complaint was dismissed with prejudice prior to trial.

The sole issue presented to the trial court was the meaning of paragraph two of the Option Agreement and whether by its terms World exercised its option in a timely fashion. The cause was submitted for decision on the basis of a joint statement of facts and issues and extrinsic evidence[4] as to the circumstances under which the parties contracted and the intent of the parties regarding the duration of the Option Agreement. Aviointeriors contended that the Option Agreement expired 60 days after January 2, 1978, while World alleged that the option could be exercised within 60 days of the exercise of its McDonnell Douglas option, even though the date of exercise of this latter option had been extended. No oral testimony was presented at trial.

### III

In its statement of decision the trial court determined there had been a timely exercise of the Option Agreement by World. The court found that,

---

[2]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

Section 431.70 provides in pertinent part: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations."

[3]The parties later stipulated that the additional net cost was $193,692.

[4]The extrinsic evidence included the depositions of William Boyd and John Brand.

in the absence of limiting language, the words "not later than 60 days after the exercise of its option to buy the aircraft" clearly and unambiguously provided that World could exercise its option to purchase the shipsets from Aviointeriors at any time within 60 days of its exercise of the McDonnell Douglas option. The court further found that the use of the words "presently provides" when making reference to the McDonnell Douglas option indicated that it was in the minds of the parties at the time the Option Agreement was adopted that the McDonnell Douglas option date might subsequently change.

On the basis of its findings, the court entered judgment for World Airways, Inc.

IV

On appeal, appellant first contends that the trial court committed prejudicial error in failing to consider the deposition testimony of Mr. Brand or Mr. Boyd, or any other extrinsic evidence, in determining the meaning of the Option Agreement. We find no merit in this contention.

█ Section 632 provides in pertinent part that "[u]pon the request of any party . . . the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Case law pursuant to section 632 provides that "the trial court's statement of decision need do no more than give reasons which state the grounds upon which the judgment rests." (*Republic Indemnity Co.* v. *Empire Builders Corp.* (1985) 167 Cal.App.3d 1163, 1167 [213 Cal.Rptr. 787].) A statement of ultimate findings is all that is required. (*Ibid.*; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599 [207 Cal.Rptr. 728].)

In addressing appellant's first contention, we initially note that the trial court's statement of decision meets the requirements of section 632 and complies with the standards enunciated in the case law. The statement of decision clearly defines the trial court's ultimate findings and the grounds upon which they are based.

Appellant attempts to convince this court that the content and language of the statement of decision show that the trial court failed to consider properly submitted extrinsic evidence in making its determination. We reject this contention on two grounds.

First, nothing in section 632 requires that a statement of decision specify the particular evidence considered by the trial court in reaching its final

determination. In this case, then, the statement of decision need not state that the trial court considered the deposition testimony or other extrinsic evidence, nor will the absence of a statement to this effect imply that the trial court failed to do so.

Second, nothing in the statement of decision itself suggests either that the trial court refused to consider the extrinsic evidence submitted by the parties or that the court relied solely on the language of the Option Agreement in reaching its decision. Appellant points to the fact that the trial court concluded that the language "not later than 60 days after the exercise of its option to buy the aircraft" is clear and unambiguous. Appellant contends that this shows that the court focused solely on the language of the Option Agreement in determining its meaning, and in so doing failed to consider other highly relevant evidence. This reasoning is flawed. The trial court was called upon to interpret the Option Agreement as a whole, and by its own statement it recognized that an issue to be resolved was the exercise date contemplated by the parties. There is no indication that it was not aided in this determination by extrinsic evidence of the intent and understanding of the parties.

■ In the absence of a contrary indication, we must presume that the judgment of the lower court is correct. "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, pp. 276-277; see also *Denham* v. *Superior Court* (1970) 2 Cal.3d 577, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Furthermore, "the rule that the findings of a trial court must be construed liberally by the reviewing court in support of the judgment is particularly applicable in the absence of a request for more specific findings. [Citations.]" (*Pilch* v. *Milikin* (1962) 200 Cal.App.2d 212, 225 [19 Cal.Rptr. 334], citing *McKinley* v. *Buchanan* (1959) 176 Cal.App.2d 608, 612 [1 Cal.Rptr. 573].)

Appellant has failed to demonstrate error in this instance. Nor did it request clarification of the statement of decision or take other action to bring the alleged omission or ambiguity to the trial court's attention.

Under these circumstances, we must conclude that the trial court properly considered the extrinsic evidence in making its determination.

V

Appellant next contends that this court must adopt its own construction of the contract. This contention is equally without merit.

■ The scope of appellate review with respect to interpretation of writings was clarified in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]. In that case the court stated that "[t]he interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' [Citations.]" (*Id.,* at pp. 865-866, fn. omitted.) However, where the evidence is conflicting, the trial court's resolution is binding. (*Id.,* at p. 866, fn. 2.) Thus, where extrinsic evidence has been properly admitted, and the evidence is in conflict, any reasonable construction by the lower court will be upheld. (See 9 Witkin, Cal. Procedure, *supra,* Appeal, § 278, p. 289.)

■ In the instant case, the deposition testimony presented to the trial court was in conflict as to the circumstances under which the parties contracted and the intent of the parties regarding the duration of the Option Agreement. The trial court found for defendant and held that appellant was obligated to perform under the agreement so long as defendant exercised its option within 60 days of its exercise of the McDonnell Douglas option. On the basis of the evidence before it, the trial court's conclusion was clearly a reasonable interpretation of the Option Agreement. Consequently, this court will not disturb the trial court's decision on appeal.

The judgment is affirmed.

Scott, Acting P. J., and Barry-Deal, J., concurred.