[No. A082666. First Dist., Div. Three. Oct. 28, 1999.]

COUNTY OF SOLANO et al., Plaintiffs and Respondents, v. VALLEJO REDEVELOPMENT AGENCY et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.C. through III.H.

## Counsel

John M. Powers, City Attorney; McDonough, Holland & Allen, Iris P. Young, G. Richard Brown, Douglas A Potts and Stacey N. Sheston for Defendants and Appellants.

Dennis Bunting, County Counsel, Vicki Sieber-Benson, Assistant County Counsel; Hyde, Miller, Owen & Trost, Nancy C. Miller, William L. Owen and Matthew D. Ruyak for Plaintiff and Respondent County of Solano.

Stuart M. Flashman for Plaintiff and Respondent Homeacres Improvement Association of Solano County.

---

## OPINION

## WALKER, J.—

### I

### INTRODUCTION

The Vallejo Redevelopment Agency (Agency), a separate legal entity from the City of Vallejo (Vallejo), agreed to pay Solano County $3.2 million for capital improvements in Homeacres, an unincorporated neighborhood and blighted area of Solano County. The Agency instead used the money earmarked for capital improvements to pay off bonds that financed the construction of an elementary school in a new development within Vallejo. Solano County and the Homeacres Improvement Association (Association), a nonprofit corporation representing the interests of about 50 out of the approximately 3,000 people living in Homeacres, alleged causes of action against Vallejo and the Agency for breach of contract, breach of a duty of fair representation, misappropriation of funds, and unjust enrichment. The trial court held that the Agency was liable to Solano County because the Agency committed an anticipatory breach of contract, and that Vallejo was liable based on unjust enrichment. The court also found that the Agency breached a duty of fair representation to the residents of Homeacres. The court held for the Agency and Vallejo on the misappropriation claim. The court awarded Solano County damages in the amount of $3.2 million, and awarded attorney fees to the Association and Solano County, and expert witness fees to Solano County.

The Agency contends on appeal that it did not breach its contract with Solano County because the county failed to fulfill certain conditions precedent and failed to prove that it was able to perform under the contract. In

the published portion of this opinion, we hold that the Agency's anticipatory breach excuses any unfulfilled conditions under the contract, and sufficient evidence establishes Solano County's ability to perform. Vallejo contends that the court's determination that it was unjustly enriched was error because it received no benefit from the Agency's actions. We disagree with this contention in the second part of our published opinion. Appellants also contend that the trial court's award of attorney fees to the Association was error because the court found that the Association lacked standing to obtain a judgment. In the unpublished part of this opinion, we agree with appellants on this issue and reject appellants' sundry other contentions.

II

BACKGROUND

## A. *California Redevelopment Law*

■ Redevelopment in California is a statutorily regulated process by which a city can eliminate "blighting" conditions within a project area. (Health & Saf. Code, §§ 33020, 33021, 33030, 33035-33037[1]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 168 [143 Cal.Rptr. 633] (*Redevelopment Agency*).) Every city is authorized to establish a redevelopment agency by ordinance. (§§ 33101, 34115.) A redevelopment agency is a public body, corporate and politic, which may sue, be sued, and make contracts. (§§ 33100, 33122, 33125; see *Kehoe* v. *City of Berkeley* (1977) 67 Cal.App.3d 666, 673 [135 Cal.Rptr. 700].) In general, a redevelopment agency is a separate legal entity from the city that established it, and the city is not liable for the debts of the agency. (*Pacific States Enterprises, Inc.* v. *City of Coachella* (1993) 13 Cal.App.4th 1414, 1424-1425 [17 Cal.Rptr.2d 68].)

The city that creates a redevelopment agency must approve a redevelopment plan for a blighted area, and adopt the plan by ordinance. (§ 33365.) The redevelopment agency, however, has the authority to implement the plan, and may only conduct its redevelopment activities within the boundaries of the planned project, with limited exceptions. (§§ 33021, 33030, 33035-33037, 33360-33375; see *Redevelopment Agency, supra,* 80 Cal.App.3d at pp. 168-170.) If the redevelopment agency of a city proposes to redevelop territory outside a city, the county board of supervisors must approve the redevelopment plan by ordinance and may delegate the redevelopment of the unincorporated area to the city. (See § 33213.)

---

[1]All statutory references are to the Health and Safety Code unless otherwise noted.

Redevelopment agencies receive their financing from tax increments, which are property taxes collected on property located within the redevelopment project area that exceed the property taxes received in the tax year before the year in which the redevelopment plan is adopted. (Cal. Const., art. XVI, § 16; § 33670.) Except in limited circumstances, a redevelopment agency can use tax increments only in the redevelopment project area from which the taxes were collected. (§§ 33334.2, subd. (g), 33670.) The tax increments that a redevelopment agency receives each year are deposited into a special fund to pay the principal and interest on loans or other indebtedness incurred by the agency that finance the redevelopment project. (Cal. Const., art. XVI, § 16; § 33670, subd. (b).)

Absent a redevelopment plan, tax increments would be allocated to other public agencies such as school districts, water districts, etc. (§ 33670.) To mitigate the burden on other public agencies from the diversion of tax increments to a redevelopment plan, redevelopment agencies, prior to 1994, often agreed to pass through part of their tax increment revenues to the other public agencies. (§ 33401, added by Stats. 1984, ch. 147, § 13, p. 508 and repealed by Stats. 1993, ch. 942, § 23, p. 5358.)

B. *The Southeast Area Redevelopment Plan*

In 1983, Vallejo proposed a redevelopment project, called the Southeast Area Redevelopment Project (Project), to Solano County that included an unincorporated residential area of the county known as Homeacres, as well as an undeveloped, newly annexed area of Vallejo called Glen Cove. Homeacres was a blighted, older neighborhood with dilapidated housing and inadequate public infrastructure. Glen Cove, on the other hand, was primarily vacant land destined for large-scale residential development.

Vallejo wanted to generate $30 million in tax increments through the Project, a portion of which was earmarked for the construction of an elementary school ($3.7 million) and freeway interchange improvements ($1.5 million) benefiting Glen Cove. Vallejo sought permission from Solano County to include Homeacres within the Project area in order to meet the definition of "blight" under redevelopment law. (See § 33320.1.) As incentive for Solano County to agree, Vallejo promised to commit $5 million to Homeacres for housing rehabilitation and capital improvements. In exchange, Vallejo wanted Solano County to pledge 20 percent of its share of future general fund tax revenues to the Agency.

In September 1983, Solano County adopted ordinance No. 1211, in which the county approved of the Project. The approval was conditioned on an

agreement for sharing tax revenues from the proposed project area between Vallejo, the Agency, and Solano County. In December 1983, Vallejo agreed to a suggestion from the Association that the Project contain provisions for creating a neighborhood planning process to establish priorities for spending redevelopment money, by adopting resolution No. 83-833 N.C. Vallejo also adopted resolution No. 83-834 N.C., which approved a report from the Solano County fiscal review committee (Fiscal Committee) that contained several recommendations for relieving the fiscal burdens that Solano County and other taxing entities would suffer as a result of the Project. Resolution No. 83-834 N.C. also referred the Fiscal Committee report to Vallejo city staff to prepare an agreement "between County and City of Vallejo to incorporate the recommendations made therein."

Also in December 1983, the Vallejo City Council adopted ordinance No. 724 N.C., which approved the final plan for the Project (Project Plan) and incorporated the Project Plan into the ordinance by reference. The Project Plan, in turn, incorporated Solano County's proposed ordinance No. 1220, containing Solano County's requirement of an agreement between Vallejo, the Agency, and Solano County to share property tax revenues from the Project area. In January 1984, Solano County adopted ordinance No. 1220, which finalized the county's approval of the Project Plan.

C. *The Agency-Solano County Agreement*

In April 1985, the Agency, whose governing board members are also members of the Vallejo City Council, and Solano County agreed in a written contract that the Agency would pay $5 million in tax increments collected from the Project area to Solano County for low-income housing ($1.8 million) and capital improvements ($3.2 million) in Homeacres. The contract incorporated by reference the Fiscal Committee report and a payment schedule showing that $5 million would be set aside for "County Projects" in Homeacres. The contract and the incorporated Fiscal Committee report specified that the Project would be limited in duration to 40 years, until $30 million in tax increments had accumulated, or until the redevelopment plan improvements had been completed, whichever occurs first. The contract also contained the following conditions, which were taken verbatim from the Fiscal Committee report:

"d. That with respect to capital improvements undertaken in the unincorporated area, the following conditions apply:

"1) That the present day cost of storm drains, water lines, street overlays, curbs, gutters, and sidewalks, and reconstruction of the County portion of

Benicia Road is estimated at approximately \$3.3 Million.[2] Such estimate is made on present value of today's dollars.

"2) That the approval of capital improvement projects to take place within the unincorporated areas would be subject to the following conditions:

"a) Approval of the Solano County Board of Supervisors.

"b) That Solano County create a Homeacres Planning Committee to develop a Homeacres Neighborhood Plan to create an area plan and establish capital improvement priorities with[in] the unincorporated area.

"3) That Solano County and Redevelopment Agency staff continue to work closely to establish a list of priorities and an integrated capital improvement plan for the project area as a whole in order to ensure that capital improvements are accommodated in the most economically feasible method."

D. *The Agency-School District Agreement*

In June 1986, the Agency agreed to pay off bonds issued by the Vallejo City Unified School District (School District) for construction of an elementary school in Glen Cove, subject to the Agency's prior obligation to Solano County as stated in the written contract between the Agency and Solano County, which was attached to the Agency-School District agreement. The Agency's liability under the Agency-School District agreement was limited to funds that were available after satisfying its prior contractual obligation to the county. In addition, any shortfall in funds to build the school were to be raised through a Mello-Roos special tax (Mello-Roos Community Facilities Act of 1982 (Gov. Code, § 53311 et seq.)).

E. *Events Leading to Payment of School District Bonds*

The Agency began receiving tax increment funds in fiscal year 1986-1987, but did not receive more than \$2.5 million—the amount necessary to trigger payments to Solano County under the written contract—until fiscal year 1988-1989. Subsequently, the Agency paid \$1.8 million to Solano County for low-cost housing improvements in Homeacres. Thus, under their agreement, the Agency owed Solano County \$3.2 million for capital improvements. The Agency made no other payments to Solano County for improvements in Homeacres.

---

[2]The \$3.3 million figure is a drafting error, and the true figure intended by both parties to the contract was \$3.2 million.

Solano County created the Homeacres Planning Committee in 1990 and 1991, and the committee conducted 16 meetings during 1991 and 1992 to prioritize capital improvements in Homeacres. Solano County hired a consultant in March 1991 to prepare a neighborhood plan for improvements in Homeacres, to survey Homeacres' residents to determine which improvements were needed, and to prepare an environmental impact statement. Although Solano County notified the Agency about the Homeacres Planning Committee meetings and provided status reports to the Agency, the Agency's staff showed minimal interest in development of the Homeacres Neighborhood Plan. In 1993 Solano County prepared and circulated a draft Homeacres plan, in April 1995 the county adopted a final plan, and in July 1995 the county rescinded the April 1995 plan and adopted a second final plan. The county prepared, circulated, and finalized an environmental impact statement during 1993 and 1994.

In 1994 the Project reached its $30 million cap in tax increments. Thereafter, Vallejo adopted resolutions to terminate the Project, which Solano County opposed on the grounds that $3.2 million of the $5 million the Agency owed had not been paid. The Agency and Vallejo responded by announcing that the unexpended funds for the Project area were inadequate to meet the county's demand, and by renouncing any obligation to Solano County for improvements to Homeacres.

In January 1995, pursuant to the agreement between the Agency and the School District, the Agency paid over $4 million in redevelopment funds to retire the outstanding principal and interest on the bonds issued by the School District to construct the Glen Cove elementary school. Including the January 1995 bond payment, the Agency had expended a total of over $8.6 million for the Glen Cove school, exceeding the original school cost projections by nearly $5 million. The Agency's January 1995 payment also left the Agency with about $1.6 million in tax increments.

F. *Trial Court Proceedings*

In April 1995, Solano County and the Association filed a complaint alleging causes of action against the Agency and Vallejo for breach of contract and misappropriation of funds. The complaint further alleged that the Agency breached a duty of fair representation to residents and landowners within the Project area, and that Vallejo was unjustly enriched. Solano County and the Association relied on a number of theories to support their allegation that the Agency's use of its funds unjustly enriched Vallejo:

(1) Vallejo accepted exorbitant administration charges from Agency funds; (2) Vallejo, as the alter ego of the Agency, misappropriated Agency funds for infrastructure improvements in the city; (3) the Agency made excessive payments to the Greater Vallejo Recreation District (Recreation District), which used the money to improve recreation facilities in Glen Cove and other parts of Vallejo; (4) the Agency engaged in a complicated funding transaction involving Vallejo and Marine World USA; (5) the Agency paid Vallejo's legal expenses in the instant law suit; (6) the Agency used redevelopment funds for school and freeway construction in Glen Cove, and to pay off the Glen Cove school bonds, which "freed up" development fees for Vallejo's use throughout the city and otherwise benefited only Vallejo residents.

The matter was tried by the court, which issued a statement of decision determining that the written agreement between the Agency and Solano County was not integrated and required parol evidence to interpret it. The court also found that the Association had "no standing to receive a judgment herein." The court found against Solano County based on its cause of action for misappropriation of funds, by finding that Vallejo and the Agency were not alter egos and were separate legal entities. The court also held against Solano County in its cause of action alleging that Vallejo breached a contract with Solano County. The court rejected Solano County's theories of unjust enrichment based on the Agency's overpayment of administrative charges, its payments to the Recreation District, or its involvement in a complicated funding scheme for Marine World USA. The court held for Solano County based on the following specific findings and determinations: (1) the Agency anticipatorily breached its agreement with Solano County by paying off the school bonds, rendering the Agency unable to pay the $3.2 million it owed to Solano County; (2) Solano County had no unmet conditions that it had to fulfill under its agreement with the Agency; (3) the Agency breached the duty of fair representation to Homeacres' residents by breaching its agreement with Solano County; and (4) Vallejo was unjustly enriched when the Agency paid off the School District bonds in the amount of $3.2 million.[3] The court ordered both Vallejo and the Agency to pay Solano County $3.2 million. The trial court awarded Solano County and the Association attorney fees, and awarded Solano County expert witness fees.

The court denied a motion for reconsideration filed by Vallejo and the Agency, which asserted that Solano County was collaterally estopped from

---

[3]The court also found that children of Homeacres' residents cannot attend the Glen Cove school, while Vallejo residents can.

claiming the validity of the July 1995 Homeacres neighborhood plan based on our decision in *Southard* v. *County of Solano* (Sept. 19, 1997) A075894 (nonpub. opn.). This appeal followed.

## III

### DISCUSSION

#### A. *Solano County's Performance Under the Contract Was Excused by the Agency's Anticipatory Breach*

The Agency, as a threshold issue, makes a diffuse, puzzling challenge to the court's finding the Agency's agreement with Solano County requires it to pay $3.2 million directly to Solano County. Solano County counters that the Agency has waived any argument that the court's findings are not supported by substantial evidence argument by failing to present the evidence fairly in its brief. We conclude both that the argument is waived and that it lacks any merit. The Agency next contends that no substantial evidence supports the trial court's finding that Solano County was not required to perform any conditions precedent under the agreement at the time of the Agency's breach. The Agency also contends that, even if its anticipatory breach excused Solano County's performance of conditions precedent under the contract, the county is not entitled to damages because the record contains no evidence showing that Solano County was able to perform under the agreement by developing a satisfactory plan for capital improvements in Homeacres. Solano County argues that the Agency's anticipatory breach excuses the performance of any conditions by Solano County, and the county points to substantial evidence showing that it was able to perform under the contract. We hold that the Agency's anticipatory breach of the contract excuses any performance by Solano County and that substantial evidence supports the trial court's finding that Solano County was able to perform any conditions required under the contract.

#### 1. *Trial Court's Determination That the Agency Was Obligated to Pay $3.2 Million*

We first examine the Agency's argument that the court erred by finding that the Agency's agreement with Solano County required it to pay $3.2 million directly to Solano County.

The trial court found that the written contract between Solano County and the Agency was not integrated, and admitted extrinsic evidence in order to interpret the terms of the contract between the Agency and Solano County.

Where extrinsic evidence is admitted to aid in interpreting the meaning of a contract, the issue is one of fact. (*Horsemen's Benevolent & Protective Assn.* v. *Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1559-1560 [6 Cal.Rptr.2d 698] (*Valley Racing Assn.*).) Based on the evidence at trial, the court found that "by way of the agreements and the official actions of [the Agency], [Vallejo], and [Solano] County, the Defendants were to provide 5 million dollars for housing and capital improvements in the unincorporated Homeacres Area." The court further found that, after the Agency spent $1.8 million for housing improvements in Homeacres, "there remains 3.2 million dollars owed by [the Agency] to the County." Because the court admitted extrinsic evidence to interpret the contract terms, the court's determinations are factual findings. (See *ibid.*) The Agency, by challenging those factual findings, was "required to set forth in [its] brief all the material evidence on the point and not merely [its] own evidence." (*Kruckow* v. *Lesser* (1952) 111 Cal.App.2d 198, 200 [244 P.2d 19], quoted in *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362] (*Fallon*).) An appellant's failure to state all of the evidence fairly in its brief waives the alleged error. (*Fallon, supra*, 3 Cal.3d at p. 881.)

Here, the Agency failed to fulfill its duty of presenting the facts fairly in its brief concerning the trial court's interpretation of the contract. The Agency, for instance, omits any facts showing the negotiations of the terms of the agreement between itself and Solano County, as embodied in the ordinances and resolutions adopted by Vallejo and Solano County. The resolutions and ordinances are crucial to interpreting the agreement between the Agency and Solano County. The Agency therefore waives any claim that its agreement with Solano County did not require that the Agency pay $3.2 million to Solano County. (*Fallon, supra*, 3 Cal.3d at p. 881.)

Regardless of the Agency's waiver, its argument fails on the merits. We will uphold the trial court's factual determination of a contract's meaning if substantial evidence supports the determination. (*Aviointeriors SpA* v. *World Airways, Inc.* (1986) 181 Cal.App.3d 908, 915 [226 Cal.Rptr. 527] (*Aviointeriors SpA*).)

Here, the written agreement, the Solano County Fiscal Committee report, and the ordinances and resolutions adopted by both Vallejo and Solano County establishing the Project and the Project Plan showed that Vallejo and the Agency pledged $5 million to Solano County for Homeacres improvements, of which $3.2 million were earmarked for capital improvements in Homeacres. In exchange for this promise, Solano County gave its consent

for the inclusion of Homeacres in the redevelopment area. Undisputed evidence showed that the Agency failed to pay the $3.2 million to Solano County for the capital improvements. This evidence was substantial, and amply supported the trial court's determination that the Agency agreed to pay Solano County $3.2 million. (*Aviointeriors SpA, supra*, 181 Cal.App.3d at p. 915.)

### 2. Substantial Evidence Supported Court's Determination That Anticipatory Breach Excused Any Conditions Precedent

■ The Agency asserts that Solano County did not perform certain conditions precedent under the contract.[4] Specifically, the Agency argues that Solano County was required under their contract to prepare a plan for capital improvements in Homeacres. We first note that the written agreement between the Agency and Solano County did not require the production of a plan for capital improvements; it called for Solano County to form a *committee* for the purpose of producing a plan and establishing priorities for improvements.[5] Solano County does not dispute that it was required under the agreement to form a committee that would develop a plan and priorities for capital improvements. Solano County contends, however, that the Agency's anticipatory breach excuses its performance under the agreement.[6] The Agency finally contends that, assuming that its anticipatory breach excused Solano County's performance under the contract, no evidence shows that Solano County was able to perform under the contract. We find substantial evidence in the record showing that the county was able to perform.

■ While an actual breach of contract cannot occur until the time for performance has arrived, an anticipatory repudiation of the contract, or anticipatory breach, occurs before performance is due under the contract and

---

[4]The Agency does not level any coherent argument or challenge to the court's finding that the Agency breached its agreement with Solano County when it paid off the school bonds in 1995. The Agency bases the vast majority of its argument on the notion that its breach did not excuse Solano County's performance. By presenting its argument as it does, the Agency effectively concedes that it committed an anticipatory breach by stripping itself of sufficient funds to perform under its agreement with Solano County.

[5]The written agreement between the Agency and Solano County required "[t]hat Solano County create a Homeacres Planning Committee to develop a Homeacres Neighborhood Plan to create an area plan and establish capital improvement priorities with[in] the unincorporated area."

[6]Solano County also argues that its performance was a concurrent condition, not a condition precedent, and that it could waive any conditions or performance under the contract because the conditions or performance solely benefited the county. We conclude that it is unnecessary to decide if Solano County's performance under its contract with the Agency were waivable conditions precedent or conditions concurrent, because the Agency's anticipatory breach excused Solano County's performance.

results in a total breach. (*Gold Min. & Water Co.* v. *Swinerton* (1943) 23 Cal.2d 19, 29 [142 P.2d 22] (*Swinerton*).) A party anticipatorily breaches a contract expressly by unequivocally refusing to perform, or impliedly by conduct "where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." (*Taylor* v. *Johnston* (1975) 15 Cal.3d 130, 137 [123 Cal.Rptr. 641, 539 P.2d 425] (*Taylor*).) A promisor's anticipatory repudiation permits the promisee to recover damages immediately for a total breach of contract without performing or offering to perform any conditions precedent under the contract. (Civ. Code, § 1440; *Swinerton*, *supra*, 23 Cal.2d at p. 29; *Dotson* v. *Intl. Alliance etc. Employes* (1949) 34 Cal.2d 362, 372 [210 P.2d 5] (*Dotson*).) However, in order to obtain damages in an action for anticipatory breach, the non-breaching party must prove that it had the ability to perform under the contract. (*Ersa Grae Corp.* v. *Fluor Corp.* (1991) 1 Cal.App.4th 613, 625-626 [2 Cal.Rptr.2d 288] (*Ersa Grae Corp.*).)

 Here, the Agency paid off the School District bonds, which rendered it unable to perform under the contract because it had reached its funding limit and had not retained the $3.2 million that it owed to Solano County.[7] This conduct resulted in an implied anticipatory breach, because the Agency placed itself in a position such that substantial performance under the contract was impossible. (*Taylor*, *supra*, 15 Cal.3d at p. 137.) Due to the Agency's anticipatory breach, Solano County was excused from fulfilling any conditions, whether precedent or concurrent, under the contract. (*Dotson*, *supra*, 34 Cal.2d at p. 372; *Swinerton*, *supra*, 23 Cal.2d at p. 29.)

The Agency is correct that Solano County was required to prove that it had the ability to perform any required conditions under their contract before it was entitled to damages, despite the Agency's anticipatory breach. (*Ersa Grae Corp.*, *supra*, 1 Cal.App.4th at pp. 625-626.) The trial court did not make any findings in its statement of decision concerning Solano County's ability to fulfill its contractual obligations. Neither did the Agency, however, object to the court's statement of decision on the ground that it omitted a

---

[7]Again, the Agency does not seriously dispute the trial court's finding that it was unable to meet its contractual obligation to Solano County after paying off the School District bonds. However, the Agency quibbles with the trial court's finding that a breach occurred by asserting, without citation or argument, that it did not commit an anticipatory breach of contract by failing to have $3.2 million available in redevelopment funds in January 1995, after paying off the School District bonds. Because this argument is not accompanied by legal citation or argument, we deem it waived. (*Interinsurance Exchange* v. *Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126] [issues unsupported by legal argument or citation deemed waived].)

finding on this material issue. "Under such circumstances, a reviewing court must assume the existence of any findings and conclusions favorable to respondent in support of the judgment" on the issue. (*Rees v. Department of Real Estate* (1977) 76 Cal.App.3d 286, 291 [142 Cal.Rptr. 789] (*Rees*); see *Golden Eagle Ins. Co.* v. *Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380 [25 Cal.Rptr.2d 242] (*Golden Eagle Ins. Co.*).) Accordingly, we will presume that the trial court found that Solano County had the ability to form a planning committee that could prepare a plan for capital improvements in Homeacres. (*Ibid.*) The only issue is whether substantial evidence supports the implied finding. (*Michael U.* v. *Jamie B.* (1985) 39 Cal.3d 787, 792-793 [218 Cal.Rptr. 39, 705 P.2d 362].)

Contrary to the Agency's assertion, substantial evidence shows that Solano County had the ability to fulfill its obligation under the contract to form a Homeacres committee for the purpose of developing a plan and priorities for capital improvements. The Homeacres Planning Committee was formed in 1990 and 1991, conducted numerous meetings, and helped Solano County in 1995 develop two plans for capital improvements in Homeacres. By its actions both before and after litigation in this case began, Solano County had taken substantial steps to perform under the contract. These actions demonstrate, at the very least, the county's ability to form a planning committee that was capable of producing a plan for capital improvements in Homeacres. Solano County is therefore entitled to damages. (*Ersa Grae Corp.*, supra, 1 Cal.App.4th at pp. 625-626.)

B. *Vallejo Was Unjustly Enriched in the Amount of $3.2 Million*

 Vallejo challenges the trial court's findings that the Agency's payments to the School District, using money contractually earmarked for Solano County, resulted in Vallejo's unjust enrichment. Vallejo argues that no evidence shows that it received a recognized benefit. We disagree. .

We first pinpoint the trial court's findings. The trial court specifically held that the payments to retire the school bonds resulted in Vallejo's unjust enrichment. The trial court did not make any findings regarding the theory that payments for school and freeway improvements in Glen Cove "freed up" money for Vallejo's use in other areas, which resulted in unjust enrichment. Again, because Vallejo did not object to the court's statement of decision on the ground that it omitted a finding on this issue, we will assume the existence of findings and conclusions favorable to respondent. (*Golden Eagle Ins. Co.*, supra, 20 Cal.App.4th at p. 1380; *Rees*, supra, 76 Cal.App.3d at p. 291.) We next look at the evidence supporting the findings.

As early as 1983, Vallejo city officials recognized that "[s]pending Agency funds on [the construction of the elementary school and freeway interchange improvements in Glen Cove] would release fees paid by the [Glen Cove] developers under existing City ordinances, for other system-wide improvements . . . ." Specifically, if redevelopment fees paid for improvements in Glen Cove that would otherwise be financed through development fees, then the development fees would be available to pay for general municipal improvements within Vallejo. The Vallejo Planning Department in 1983 estimated that the development of Glen Cove would generate about $8.6 million in development fees, of which more than $3.5 million were in real property development and bridge development fees. Testimony at trial established that the Glen Cove development generated development fees in amounts in line with the 1983 estimate. The real property development fees collected in Glen Cove went to a special city fund, to be used for improvements anywhere in Vallejo, and the bridge development fees collected in Glen Cove also went to a special fund used for transportation purposes in Vallejo.

■ "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." (Rest., Restitution, § 1.) "A person is enriched if he receives a benefit at another's expense. (*Id.*, com. a, p. 12.) The term 'benefit' 'denotes any form of advantage.' (*Id.*, com. b, p. 12.) Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.' (*Id.*, com. c, p. 13.)" *Ghirardo* v. *Antonioli* (1996) 14 Cal.4th 39, 51 [57 Cal.Rptr.2d 687, 924 P.2d 996] (*Ghirardo*).) "For a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution." (*California Federal Bank* v. *Matreyek* (1992) 8 Cal.App.4th 125, 132 [10 Cal.Rptr.2d 58] (*Matreyek*).)

■ Here, the Agency paid over $8.6 million for the development of the Glen Cove elementary school, which is roughly equal to the total amount of development fees generated in Glen Cove. Because of the Agency payments, those development fees went to Vallejo and other agencies instead of being used to develop Glen Cove. A portion of those development fees, an amount estimated in 1983 to be $3.5 million, was available to Vallejo for its use for

both general and transportation improvements. Vallejo thus benefited directly from the Agency's payments to Glen Cove for its development.[8] (*Ghirardo, supra,* 14 Cal.4th at p. 51; *Matreyek, supra,* 8 Cal.App.4th at p. 132.)

Vallejo protests that the majority of the fees flowed to other public entities, such as the School District or the Recreation District, and that the record does not show the precise amount of fees collected or where they were distributed. Substantial evidence, and reasonable inferences from that evidence, however, show that about $3.5 million in development fees went to Vallejo for both general and transportation purposes. Although the evidence does not show the precise amount of fees collected, or how much Vallejo received, Vallejo clearly received a substantial portion of the estimated $8.6 million collected in development fees.[9]

Vallejo also contends that there is nothing illicit in the fact that funds were "freed up" by the Agency's redevelopment actions in Glen Cove. Although not clearly stated, Vallejo seems to argue that there was nothing unjust about its enrichment. We disagree.

A transferee with knowledge of the circumstances surrounding the unjust enrichment may be obligated to make restitution. (*First Nationwide Savings* v. *Perry* (1992) 11 Cal.App.4th 1657, 1663 [15 Cal.Rptr.2d 173] (*First Nationwide Savings*); cf. Rest., Restitution, § 168 ["Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser."].)

While Vallejo was not a party to the agreement between the Agency and Solano County, it set in motion the actions of the Agency to contract with

---

[8]Although it is not necessary to our decision, evidence below indicated that Vallejo would receive about $1.6 million annually in property taxes from the Glen Cove area after the tax increment cap of $30 million for the Project was reached. Thus, the Agency's payments to Glen Cove, which helped the development of Glen Cove through construction of the elementary school and through freeway improvements, resulted in a tangible present and future benefit to Vallejo in the form of annual tax revenue.

[9]Vallejo argues that no evidence shows the precise amount by which it was benefited. This is true. But in some circumstances the calculation of the amount of restitution may be based, not on the amount by which the defendant was unjustly enriched, but on the amount the plaintiff lost. (See Rest., Restitution, § 1, com. e, pp. 14-15.) Here, the trial court calculated the amount of restitution based on the amount that Solano County lost, and substantial evidence established that Solano County lost $3.2 million. Vallejo fails to challenge either the trial court's determination that Solano County's loss was the appropriate metric for determining the amount of restitution or the evidence supporting the court's determination. We therefore reject its contention.

Solano County for the redevelopment of Homeacres by adopting various ordinances and city council resolutions. We need not decide whether these ordinances and other official actions amount to an enforceable contract to pay Solano County, because it is clear that Vallejo intended, beginning as early as 1983, that Solano County would receive a total of $5 million for use in the Homeacres neighborhood. The Agency paid $1.8 million of this amount, but was unable to pay the remaining $3.2 million to Solano County because of the 1995 school bond payment to Glen Cove. The total amount by which Vallejo was enriched because of the Agency's payments to Glen Cove was somewhere in the vicinity of $3.5 million. Of this amount, $3.2 million should have gone to Solano County. Vallejo does not, and cannot, claim that it was ignorant of the Agency-School District payments, because the same individuals were on the governing boards of both the Agency and the Vallejo City Council. We conclude that Vallejo was enriched at the expense of Solano County in the amount of $3.2 million, as found by the trial court. By having knowledge of the circumstances surrounding its enrichment, Vallejo was unjustly enriched. (*First Nationwide Savings*, *supra*, 11 Cal.App.4th at p. 1663.) Because Vallejo was unjustly enriched by the payments to the School District, we need not address any other theory advanced by Solano County, either at trial or on appeal, to support the trial court's judgment.

C.-H.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### DISPOSITION

The award of attorney fees in the amount of $19,371.31 to Homeacres Association is reversed. We award costs on appeal to the county. In all other respects the trial court's judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied November 29, 1999.

*See footnote, *ante*, page 1262.