[No. A078223. First Dist., Div. Three. Apr. 14, 2000.]

M. MUZQUIZ, as Executor, etc., Plaintiff and Appellant, v. CITY OF EMERYVILLE, Defendant and Respondent.

**COUNSEL**

Horowitz & Rubinoff, Martin M. Horowitz, Stephanie Rubinoff and Bryce C. Anderson for Plaintiff and Appellant.

Michael G. Biddle, Assistant City Attorney; Shartsis, Friese & Ginsburg, Joel Zeldin and Robert Charles Ward for Defendant and Respondent.

**OPINION**

**McGUINESS, P. J.**—This is an appeal from a judgment in favor of respondent City of Emeryville (the City) following a court trial on a complaint alleging employment discrimination on the basis of age under Government Code section 12900 et seq.[1] Appellant Frances Muzquiz contends the trial court committed prejudicial error, both by adopting an erroneous

---

[1] The employee, Francis Muzquiz, died after this appeal was filed. The appeal is now being prosecuted by her estate. For consistency with the record, in this opinion we will continue to refer to Frances Muzquiz as the appellant.

burden of proof and by considering inadmissible evidence at trial. We conclude it is the parties themselves who have confused the standards of proof applicable to review of a motion for summary judgment on an employment discrimination claim with those more properly applicable in the context of a bench trial on the same claim. Because the trial court itself did not err, and the judgment was amply supported by substantial evidence in the record, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Muzquiz began working for respondent City in 1981, when she was 62 years of age. After working at the City redevelopment agency, appellant became the secretary to the city manager in 1984. Her duties consisted of the usual duties required of a secretary: typing, dictation, photocopying, and handling the city manager's mail, telephone calls and appointments. Between 1984 and 1988, appellant worked first for City Manager Joseph Tanner, and then for acting City Manager Mark Doane. In 1987, appellant applied to Doane for a position as project manager. Appellant was interviewed, but did not receive the job.

Also in 1987, Antoinette Watson was hired by the City as a clerk typist. Shortly thereafter, she was promoted to administrative secretary to the executive director of the City redevelopment agency. Between 1990 and 1993, Watson was assigned an increasing number of duties with the city manager's office. On several occasions during this period, Watson told both Flores and appellant that she would like to have appellant's job whenever appellant retired. Appellant told Watson she would probably be retiring in two years.

John Flores became city manager in January 1988. Appellant continued in her position as secretary to the city manager. As such, Flores became appellant's sole supervisor, with ultimate authority for evaluating as well as hiring and firing her. In Flores's opinion, appellant's job performance as his secretary was "minimally satisfactory." Later that year, when the position of assistant to the city manager became open, appellant applied to Flores for promotion to that job. According to appellant, Flores told her "he was considering a younger person for the job." Flores did not thereafter contact appellant about her application or interview her for the position. Instead, Ellen Cherner-Whitton was hired as assistant to the city manager, and subsequently promoted to the position of assistant city manager. Thereafter, appellant also provided secretarial services for and reported to Cherner-Whitton.

Appellant testified that on more than one occasion after 1990, Flores commented to her "about coming in to work when [she] could be in

retirement," and "made suggestions that [she] might be able to go on trips and travel with [her] daughter . . . during [her] retirement." Flores denied any recollection of such conversations with appellant, other than one initial generalized conversation with her as her new employer at the time she began working with him, in which they discussed her future plans. Appellant acknowledged that Flores never asked her when she would be retiring from her job.

Anne Haden was employed as city attorney from September 1989 through January 1994. She worked with or in close proximity to appellant on a daily basis from the beginning of this period. In consequence, Haden had ample opportunity to observe appellant's work habits, capabilities and behavior on the job. Among other things, Haden testified that appellant read books and newspapers on the job, failed to answer the telephone while at her desk, failed to file work properly, left work early without notice and with her assigned tasks uncompleted, made numerous and repetitive typographical errors, failed or refused to proofread or use word processing capability, was unwilling to learn or use new work technologies, breached confidences, and failed or refused to perform assigned tasks including photocopying, collating, and delivery of materials to other City employees. On more than one occasion, Flores, Haden and/or Cherner-Whitton were forced to stay late performing filing, photocopying and collating tasks that should have been performed by appellant, but which she had failed to do.

In 1992, Flores asked Haden to participate with him in a cost-saving experiment, under which if either of their secretaries was absent due to illness or vacation, Flores and Haden would use each other's secretary rather than hire an expensive temporary secretary. Haden acquiesced in the experiment. However, as a result of the difficulties she experienced trying to work with appellant, Haden formed the opinion not only that appellant's job performance was "very unsatisfactory," but that she had a "complete lack of work ethic."[2] Haden informed Flores both orally and by written memorandum that she did not trust appellant to do her work, "under no circumstances" would she ever be willing to use appellant as her secretary, and she would instead employ professional temporary secretaries whenever her own secretary was absent. Flores communicated this information to appellant.

Assistant City Attorney Michael G. Biddle also formed a poor impression of appellant's work habits. Appellant's desk was only 20 feet from Biddle's

---

[2]At trial, Haden specifically testified that she "would not have Frances Muzquiz as [her] secretary under any circumstances," and that her unwillingness to have appellant as her secretary was not "in any way at all based upon her age." Haden summed up her opinion of appellant as follows: "I'm sorry to say [appellant] is one of the most uncooperative people I have ever met in my life. The most self-involved, self-centered, inflexible, and unsuitable employee that I have ever, ever seen."

office. He often observed her reading newspapers or books at her desk, or engaging in lengthy conversations with her daughter. Whenever Biddle had to ask appellant for routine assistance in obtaining copies of contracts or other City documents in her possession, appellant would react in a negative manner as though Biddle's request was a "burden" or an "imposition." As a result of his experience and observation of her inadequate job performance, Biddle was forced to have his own secretary maintain duplicate files of documents that were supposed to be maintained by appellant in her position as secretary to the city manager.

City Mayor Nora Davis was also familiar with appellant's poor job performance, based on her own observation of appellant's conduct on a daily basis. Davis testified she was in the City offices "at least once or twice a day," on which occasions she would regularly see appellant reading a book at her desk or carrying on extended conversations with her daughter, while leaving the telephone unattended and unanswered. Davis noted that City Manager Flores was finally forced to answer the telephone himself. Based at least in part on these observations, Davis concluded that appellant's time was seriously underutilized, the City's resources were not being well spent, and "the elimination of [appellant's] position would have almost no impact on the delivery of service to the citizens of Emeryville or business community of Emeryville . . . ."

Like Haden, Biddle and Davis, Assistant City Manager Cherner-Whitton experienced serious difficulties working with appellant. Although technically not appellant's supervisor, Cherner-Whitton had authority to assign work to her. Cherner-Whitton found that although appellant had been given training and support to perform the responsibilities of her position, she seemed incapable of handling any administrative tasks requiring critical thinking or organizational skills. At the same time, appellant showed no motivation, initiative or interest with respect to performing her work well or learning new technical skills. Instead, she read books and newspapers for hours at a time, exhibited a "very negative" attitude, and generally "created morale problems" in the office.[3]

Because of her unsatisfactory experience working with appellant, Cherner-Whitton was unable to trust appellant with anything but the most basic secretarial functions, such as opening and distributing mail. City Manager Flores also gave Cherner-Whitton clerical tasks that would ordinarily have been assigned to appellant as her responsibility, but which Flores

[3]As an example of appellant's substandard work habits, Cherner-Whitton cited her apparent inability or unwillingness to use spell check on the word processor, leading her to repeat the same typographical mistakes over and over again even when they were repeatedly pointed out to her.

himself did not believe appellant was capable of performing. As a result, Cherner-Whitton ended up spending 25 to 50 percent of her work time performing administrative and clerical duties that were actually within the scope of appellant's job. Cherner-Whitton discussed these problems with Flores both orally and in two memoranda written in March and July 1990. In the memoranda, Cherner-Whitton enumerated appellant's numerous job-related failings in detail, and articulated four "alternatives" to "accommodate our needs": (1) create a new position for appellant and hire a new person to perform her current duties; (2) create a new position and shift most of appellant's current duties to the new position; (3) "[p]ersuade the incumbent [appellant] to retire and hire a new individual"; or (4) "[t]erminate the incumbent and hire a new individual."[4]

The oral and written comments of Cherner-Whitton and Haden about their difficulties working with appellant affected Flores's confidence in the quality of appellant's job performance. The criticisms of appellant's job performance made by these City staff members were communicated to appellant by both Flores and Cherner-Whitton. However, despite Flores's repeated attempts "to correct and improve" appellant's performance, appellant failed to improve.

In early 1993, the City faced a severe budgetary crisis due to a potentially drastic loss of revenues from the State of California. As of June 1993, the City estimated that the combined impact of the proposed state budget and declining revenues would result in a City budget shortfall of at least $2.7

---

[4]In the first memorandum, dated March 2, 1990, Cherner-Whitton expressed her frustration with appellant's performance in pertinent part as follows: "This is to follow up on our conversation regarding the performance of the Executive Secretary [appellant]. The incumbent is ineffective in the position and is not performing adequately in any area. I receive little to no administrative or clerical support from the Executive Secretary, meaning that I spend 25% to 50% of my time handling duties which should be assigned to the Executive Secretary, including City Clerk duties. Needless to say, this reduces my effectiveness and productivity and is professionally frustrating. I believe that the situation requires immediate attention."

In the second memorandum, dated July 19, 1990, Cherner-Whitton wrote: "In March, I wrote you a detailed memo (attached) describing the performance problems of the Secretary to the City Manager. Since that time, the situation has deteriorated further. Frances' work is consistently sloppy, incomplete and at a below minimum level, and her negative attitude has worsened. She does not take the responsibilities of her job seriously, and she takes no initiative to learn new aspects of the job. In short, Frances slides by, doing the absolute minimum amount of work, and what she does, she does poorly and with a negative attitude. Our office suffers in many ways: [¶] 1. You [Flores] and I end up doing far more clerical work than any City Manager and Assistant to the City Manager should be doing, which significantly reduces our productivity; [¶] 2. The City's records system, which is non-existent or abysmal to start with, is deteriorating further. In fact, the City Manager's Office/City Clerk's Office has no current central filing system at all; [¶] 3. Your effectiveness as a City Manager is greatly undermined, as Frances is disloyal and negative and sets an extremely negative example for the rest of the clerical staff."

million. Because deficit spending was not an option for the City under the California Constitution (Cal. Const., art. XVI, § 18), the City raised taxes, allocated emergency reserves to the 1993-1994 budget, and sought to make significant cuts in spending. Among other things, the City considered cutting police and fire services, funds for street and park maintenance, programs for in-home senior care, and after-school daycare for children. In developing the City budget, the city council and staff undertook an extensive public review of all City expenditures. Each department was asked to cut 25 percent from its budget. At the direction of the city council, City Manager Flores was assigned the task of developing a list of potential budget cuts with the assistance of department heads and Assistant City Manager Cherner-Whitton. The city council directed that potential budget cuts be determined by the criterion of which cuts would have the least impact on the services provided by the City to the public.

In the process of seeking ways to reduce expenses to meet the threat of the budgetary shortfall, Flores considered combining in one new position the two then existing jobs of secretary to the city manager and secretary to the city attorney. When Flores discussed this plan with Haden, she advised Flores that under no circumstances would she be willing to accept appellant as her secretary in this newly combined secretarial position. In turn, Biddle told Haden that if appellant were assigned to perform secretarial duties for him as a result of the consolidation of the secretarial positions, "he would start looking elsewhere" for employment. These criticisms of appellant by other members of the City staff, together with Flores's own observation of appellant's often "disrespectful" behavior and unwillingness to work with anyone else, necessarily affected his estimation of appellant's ability to perform the projected combined secretarial position.

Applying the criteria established by the city council for the selection of budget cuts, Flores determined that the elimination of appellant's position would save the City money while resulting in a minimal disruption or reduction of City services to the public. To this end, he proposed shifting the responsibilities of the city manager's secretary to the city attorney's secretary, in the new combined position reporting to and under the direct supervision of the city attorney. Flores placed elimination of appellant's position as secretary to the city manager high on various lists of potential budget cuts; eventually, it was listed as the ninth of 18 separate items recommended for reduction or elimination. In April 1993, Flores told appellant that, as a result of the budget crisis, her position might be eliminated. On June 1, 1993, the city council adopted the 1993-1994 budget, effective July 1, 1993, which increased taxes and eliminated several positions, including appellant's. Because her position was being eliminated, at Flores's suggestion appellant elected to retire effective June 30, 1993, rather than be laid

off. All of appellant's former job responsibilities were either eliminated, assumed by the city manager, or shifted to the city attorney's secretary. Haden's existing secretary, Cora Pressley, retained that position. Pressley herself was over 40 years of age at that time. Because of their previous unsatisfactory experiences trying to work with appellant, this was the only arrangement acceptable to Haden, Cherner-Whitton, and Biddle.

After leaving her employment, appellant contacted the United States Equal Employment Opportunity Commission (EEOC) and requested representation in an action against the City claiming that (a) she was laid off on the basis of age discrimination, and (b) she was entitled to the combined secretarial position retained by Pressley. The City responded that appellant had retired at the time of the elimination of her position for economic reasons, and that she had not been laid off. Pressley subsequently left her employment with the City, and Watson was promoted to the combined secretarial position.

On June 24, 1994, appellant filed this action against the City in a complaint alleging three causes of action for breach of implied-in-fact contract and wrongful discharge, breach of the covenant of good faith and fair dealing, and age discrimination under Government Code section 12900 et seq. The trial court granted summary adjudication in favor of the City on the first two causes of action, and the case went to trial solely on appellant's claim of age discrimination. Both sides having waived a jury, the case was tried to the court.

At the conclusion of an 11-week trial, the trial court entered judgment in the City's favor. In its lengthy and detailed statement of decision, the trial court found, among other things, that: (a) appellant had failed to establish a prima facie case of age discrimination because she failed to demonstrate either that she was performing her job as secretary to the city manager "at a level that met her employer's legitimate expectations," or that she was qualified for the newly created combined secretarial position; (b) assuming appellant had established a prima facie case, the City had articulated legitimate, nondiscriminatory, budgetary and economic reasons for its decision to terminate appellant's position as secretary to the city manager; and (c) appellant had failed to carry her burden of establishing that the City's explanation was a pretext, and the real "determining influence" or "motivating factor" in the City's decision to eliminate her position was discrimination against her on the basis of her age. This appeal timely followed.

#### SUFFICIENCY OF THE EVIDENCE OF NONDISCRIMINATORY INTENT

██ Both federal and state law prohibits employers from discriminating against employees on the basis of age. (Gov. Code, § 12941, subd. (a); 42

U.S.C. § 2000e et seq.; 29 U.S.C. § 621 et seq.) Although state and federal antidiscrimination laws "differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute. [Citations.]" (*Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316-1317 [237 Cal.Rptr. 884].)

 Any employee making a claim of age discrimination ultimately bears the burden of proving that the challenged adverse employment action was based on the employee's age. Because direct evidence of such discriminatory motivation is rarely available, the courts have established a system of shifting burdens in an attempt to aid the presentation and resolution of employment discrimination claims that rely on circumstantial evidence to prove discriminatory intent. (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-805 [93 S.Ct. 1817, 1824-1826, 36 L.Ed.2d 668]; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001-1005 [67 Cal.Rptr.2d 483]; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 195-205 [48 Cal.Rptr.2d 448]; *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730-1731 [35 Cal.Rptr.2d 181].)

This burden-shifting system requires the employee first to establish a prima facie case of age discrimination. In order to do so, the employee must offer circumstantial evidence giving rise to a reasonable inference of discrimination on the basis of age. The requirement is not an onerous one. (*Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at pp. 1002-1003; *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1751 [52 Cal.Rptr.2d 620].) In the context of the usual age discrimination case, a prima facie case of age discrimination arises when the employee shows that: (1) at the time of the adverse employment action, the employee was 40 years of age or older; (2) some adverse employment action was taken against the employee; (3) at the time of the adverse action the employee was satisfactorily performing his or her job; and (4) the employee was replaced in his or her position by a significantly younger person. (*Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at p. 1003; *Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 199-200; *Mixon v. Fair Employment & Housing Com., supra,* 192 Cal.App.3d at p. 1318.)

 If the employee succeeds in establishing a prima facie case of age discrimination, the employer is then required to offer a legitimate, nondiscriminatory reason for the adverse employment action. If the employer fails to do so, the employee prevails. On the other hand, if the employer does articulate a presumptively valid, nondiscriminatory reason for its action, the

burden then shifts back to the employee to demonstrate by competent evidence that the employer's stated reason for the adverse employment decision was in fact a pretext or coverup for age discrimination. This ultimate issue is decided on all the evidence. (*McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at pp. 802-805 [93 S.Ct. at pp. 1824-1826]; *Hersant v. Department of Social Services, supra,* 57 Cal.App.4th at pp. 1002-1003; *Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 195-205; *Martin v. Lockheed Missiles & Space Co., supra,* 29 Cal.App.4th at pp. 1730-1731.)

Even if the employee succeeds in establishing a prima facie case, however, the burden of persuasion never shifts to the employer. At all times, the burden of persuasion remains firmly on the employee to establish that the employer intentionally discriminated against the employee. Although the employer bears the burden of producing additional evidence of legitimate nondiscriminatory reasons, it need not persuade the court that it was actually motivated by the proffered reasons. It is only required to raise a genuine issue of fact as to whether it discriminated against the employee, by setting forth admissible evidence of its reasons for taking employment action adverse to the employee. (*Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 200-201; *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 663-664 [8 Cal.Rptr.2d 151].)

"In other words, once the employer produces evidence of a nondiscriminatory reason for its employment decision which, if believed by the fact finder, will support a verdict in the employer's favor, '. . . the factfinder must decide upon all of the evidence before it whether defendant intentionally discriminated against plaintiff. [Citation.] In short, the trier of fact decides whether it believes the employer's explanation of its actions or the employee's.' [Citation.]" (*Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at p. 201.) That is to say, once the employer has succeeded in carrying its burden of production, the entire framework for shifting presumptions and burdens between the parties " 'drops from the case' " and is no longer relevant. (*Ibid.*; see also *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 509-511 [113 S.Ct. 2742, 2748-2750, 125 L.Ed.2d 407] *Mixon v. Fair Employment & Housing Com., supra,* 192 Cal.App.3d at p. 1319.) The employer's presentation of evidence of a legitimate nondiscriminatory reason for the adverse action having been made, the trier of fact proceeds to decide the ultimate question: whether the employee has proven that the employer intentionally discriminated against the employee. (*St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at pp. 509-511 [113 S.Ct.

at pp. 2748-2750]; *Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 201-202.)[5]

In this case, because the trial court concluded there were triable issues of material fact as to whether the City's adverse economic determination was made with discriminatory intent, appellant's age discrimination claim survived the City's motion for summary judgment and the matter proceeded to trial on that cause of action. At this stage, therefore, the intermediate construct of shifting presumptions and burdens dropped from the case, leaving only the ultimate issue of whether appellant lost her job with the City because of discrimination against her on the basis of age. It remained appellant's affirmative burden to prove this.

At trial, the City presented evidence both that the City's decision to eliminate appellant's position was based on legitimate, nondiscriminatory economic and budgetary factors, and that appellant's job performance in her position was unsatisfactory. In response, appellant introduced evidence purporting to demonstrate that the City's stated reasons for the adverse employment action were merely a pretext for a discriminatory motive. It was left to the trial court, in its role as trier of fact, to decide which evidence it found more convincing: appellant's evidence of the City's allegedly discriminatory intent, or the City's evidence of its age-neutral reasons for the decision to eliminate appellant's job as secretary to the city manager and merge that position with the secretary to the city attorney.

On appeal, the parties persist in framing the issues in terms of the framework of evidentiary stages and shifting burdens appropriate to pretrial or prejudgment motion proceedings seeking to test the adequacy of the parties' competing claims. Thus, the City urges it presented extensive evidence both that one or more of appellant's prima facie elements was lacking, and that its adverse employment action was based on legitimate, nondiscriminatory factors; and it contends appellant failed either to prove a prima

---

[5]In other words, "[b]y the time that the case is submitted to the jury, . . . the plaintiff has already established his or her prima facie case, and the employer has already proffered a legitimate, nondiscriminatory reason for the adverse employment decision, leaving only the issue of the employer's discriminatory intent for resolution by the trier of fact. Otherwise, the case would have been disposed of as a matter of law for the trial court. That is to say, if the plaintiff cannot make out a prima facie case, the employer wins as a matter of law. If the employer cannot articulate a nondiscriminatory reason for the adverse employment decision, the plaintiff wins as a matter of law. In those instances, no fact-finding is required, and the case will never reach a jury. [¶] In short, if and when the case is submitted to the jury, the construct of the shifting burden 'drops from the case,' and the jury is left to decide which evidence it finds more convincing, that of the employer's discriminatory intent, or that of the employer's race- or age-neutral reasons for the employment decision." (*Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at p. 204.)

face case of discrimination, or to carry her burden of proving pretext. For her part, appellant argues that the trial court did not consider the "proper issues on appellant's prima facie case"; according to appellant, she "did not need to prove satisfactory job performance in order to establish a prima facie case," and it was actually *the City's* burden to show that her job performance was *unsatisfactory*.

Because the only issue properly before the trier of fact was whether the City's adverse employment decision was motivated by discrimination on the basis of age, the shifting burdens of proof regarding appellant's prima facie case and the issue of legitimate nondiscriminatory grounds were actually irrelevant. Although the trial court's statement of decision is framed in terms of specific findings in line with the progressively shifting burdens of (a) establishing a prima facie case of age discrimination, (b) articulating a legitimate nondiscriminatory reason for the adverse employment decision, and (c) demonstrating that the reason given was pretextual, the trial court simply set out these findings as the underlying evidentiary basis for its ultimate determination that appellant "failed to carry her burden of proving age discrimination" under applicable law. The trial court's statement of decision presented an accurate statement of the law. More importantly, the trial court did in fact make a specific negative finding on the ultimate issue properly before it: to wit, whether appellant had borne her burden of proving that the City discriminated against her because of her age.[6]

---

[6]This is clear from the trial court's statement of decision. Thus, the trial court specifically found: "The Court, having considered the evidence and heard the arguments of counsel, finds for the Defendant City of Emeryville and against plaintiff Frances Muzquiz, plaintiff having failed to carry her burden of proving age discrimination under the FEHA. [¶] . . . [¶]

". . . Plaintiff contended that she was discharged by defendant City from her position as Secretary to the City Manager as the result of age discrimination. [¶] . . . [¶]

". . . [T]he Court finds that defendant articulated legitimate non-discriminatory reasons for its decision to terminate plaintiff and that plaintiff failed to carry her burden of proving that Defendant's decision was a pretext for discrimination against her on the basis of age. [¶] . . . [¶]

"Plaintiff failed to prove by a preponderance of the evidence that the above-stated reasons were not the true reasons for plaintiff's termination. Plaintiff's attempts to characterize the City's legitimate non-discriminatory reasons for its decision as a series of different, pretextual explanations, designed to mask a discriminatory intent, are not supported by the evidence. At all times, the City's substantive explanations for the elimination of plaintiff's job have been consistent, reasonable and credible. . . .

"Plaintiff has failed to carry her burden of proving that the City's legitimate, non-discriminatory reasons for the elimination of plaintiff's job were a pretext for discrimination against plaintiff on the basis of her age. Thus, for example, she has not introduced any credible evidence that the budget crisis was contrived or exaggerated for the purpose of eliminating her job because of her age. Nor has she proved that the City used the existence of the budget crisis as an excuse to eliminate her position because of her age. To the contrary, the evidence overwhelmingly demonstrates that plaintiff's age was not a 'determining

The question on appeal, therefore, is nothing more or less than whether the evidence presented actually supports the decision the trial court rendered on the factual issue before it. ■ As to this question, our task is simply to review the record to determine whether there was sufficient substantial evidence to support the trial court's decision on this factual issue. (*Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 200-208.) In reviewing the evidence, we must resolve all conflicts in favor of the verdict, and indulge in all reasonable and legitimate inferences in order to uphold the verdict. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) "It is an elementary . . . principle of law, that when a [judgment] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Ibid.*)

■ Applying this standard, as we must, we have no difficulty in concluding that the trial court's decision was supported by substantial evidence. The City presented competent evidence that it was experiencing a severe budgetary shortfall and had to reduce expenses. The city council specifically directed the city manager, appellant's supervisor, to develop a list of significant potential budget cuts, taking into account which cuts would have the least effect on the services provided by the City to its citizens. In order to cut costs, the city manager experimented with sharing appellant's secretarial services with the city attorney. This experiment was completely unsuccessful, due to a combination of appellant's poor job performance, negative

influence' or a 'motivating factor' in deciding to eliminate her position; and plaintiff's age had nothing to do with the elimination of her job or the selection of Cora Pressley for the combined position of secretary to the City Attorney and Secretary to the City Manager. . . .

"Plaintiff's purported proof at trial essentially consisted of a request that this Court second-guess the City's sincere, legitimately motivated responses to a genuine budget crisis. This Court does not sit as a 'super-personnel department' and disregard the City's budget and personnel decisions where the Court finds—as it does here—that plaintiff failed to produce sufficient probative evidence that the City acted unreasonably or that plaintiff's age motivated the decisionmaking. . . . [¶] . . . [¶]

"The Court exercised independent judgment in evaluating whether the City's perception of a budget crisis was unreasonable and unworthy of credence, and whether its actions undertaken during that perceived budget crisis were legitimate or were a pretext for discrimination against plaintiff because of her age. Plaintiff has not shown that the budget process was pretextual, that the City staff or City Council was insincere, or that any decisions made had anything to do with plaintiff's age, must less an intent to discriminate against plaintiff because of her age.

". . . Plaintiff did not offer any evidence that was credible and sufficient to show age bias toward plaintiff. . . . Nor did plaintiff show any connection between any purported age-biased comments and the City's employment decision with respect to plaintiff."

attitude, and inability or unwillingness to work with others. Other City staff members, including the city attorney and the assistant city manager, made it clear that they would not work with appellant in the future.

The failure of this experiment directly influenced the city manager's critical budgetary decisions (a) to include appellant's position of secretary to the city manager among those positions slated for elimination, (b) to give the duties of appellant's former job to a new combined secretarial position supervised by the city attorney and serving both the city attorney and the city manager, and (c) to retain Pressley in the new position rather than replacing her with appellant. The evidence was overwhelming that these budgetary decisions were based on the city council-mandated criteria of determining budget cuts on the basis of which cuts would have the least impact on public services provided by the City. The fact that Pressley—who was *already* the city attorney's secretary—was also better qualified than appellant for the new combined secretarial position, is simply additional evidence reinforcing the conclusion that the City's action was not a product of age-based discrimination against appellant.

By the same token, there is virtually *no* evidence to support appellant's assertion that the elimination of her position and retention of Pressley to fill the new combined position was based on discrimination against appellant on the basis of age. Appellant failed to demonstrate that (a) the budgetary crisis was unreal, contrived or exaggerated; (b) the City's budgetary process was illegitimate or pretextual; or (c) the City staff was insincere in its professed reasons for taking the actions it did. Neither did appellant produce any evidence that (d) the City simply used the existence of the budgetary crisis as an excuse to discriminate against her; (e) the true underlying motivation for the City's employment actions was her age; or (f) those actions and decisions had *anything* to do with her age. The only evidence appellant was able to offer were a few isolated conversations in which City Manager Flores and Watson mentioned her possible retirement in passing. Appellant offered *no* evidence any supervisor or superior ever asked her when she would be retiring from her job, or discussed that specific subject with her. The burden was on appellant to prove that the City's legitimate, nondiscriminatory reasons for eliminating her job were merely a pretext for age-based discrimination against her. The record is quite clear that she failed to bear that burden.

Under the standard of review that we must follow on appeal, this court is not in a position to weigh any conflicts or disputes in the evidence, or to assess the credibility of the witnesses; that is the province of the trial court alone. Our authority begins and ends with a determination of whether, on the

entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the trial court's judgment. Even where two or more different inferences can reasonably be drawn from the evidence, this court is without power to substitute its own inferences for those of the trial court and decide the case accordingly. In the absence of a rule of law specifying the inference to be drawn, it is for the trier of fact to resolve such conflicting inferences. We must therefore consider all of the evidence in the light most favorable to the City as prevailing party, giving it the benefit of every reasonable inference from the evidence tending to establish the correctness of the trial court's decision, and resolving conflicts in support of the judgment. (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631 [85 Cal.Rptr.2d 386]; *Estate of Beard* (1999) 71 Cal.App.4th 753, 778-779 [84 Cal.Rptr.2d 276]; *Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65], disapproved on other grounds in *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 287 & fn. 3 [137 Cal.Rptr. 635, 562 P.2d 316]; *Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757], disapproved on other grounds in *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 & fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 359, pp. 408-410.) On the basis of the substantial evidence in the record, we uphold the trial court's determination in favor of the City.

### EVIDENTIARY ISSUES

Appellant next objects to the trial court's admission of certain evidence of the dissatisfaction of various City employees with her job performance, and contends the only relevant and material evidence is that given by her immediate supervisor, City Manager Flores. The contention is meritless.

▮ Appellant has the burden of demonstrating both that the evidence at issue was erroneously admitted, and that the error was prejudicial. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].) Evidentiary rulings will be deemed harmless if the record demonstrates the judgment was supported by the rest of the evidence properly admitted. (*American Federation of State etc. Employees v. County of Los Angeles* (1983) 146 Cal.App.3d 879, 887 [194 Cal.Rptr. 540].) As to the specific items of evidence at issue here, there was neither error nor prejudice.

Appellant expressly "does not contend that job performance would have been irrelevant to the decision by the City to pare its work force because of budget constraints. Obviously, the more valuable the employee is to the

overall workings of the City, the more legitimate reason the City has to keep that employee in preference to another." In effect, then, appellant *concedes* that evidence of her job performance was relevant to the central issue in this case: whether the City's articulated budgetary reasons for taking employment action adverse to her were pretextual.

It is clear from the record that the specific employment actions at issue in this case were taken by Flores in consultation with and, at least in part, on the basis of the opinions of Haden, Cherner-Whitton and others about appellant's ability to perform her job. The record is also clear that those responsible for actually adopting the budgetary measures proposed by Flores had knowledge of the serious problems with appellant's work.

Appellant specifically challenges the admission of the testimony of three witnesses with firsthand knowledge of her job performance: Mayor Davis, former City Attorney and Acting City Manager Doane, and records consultant Ellen Zapata Davis. In her position as a member of the city council, Davis supported and voted to adopt the budget eliminating appellant's position. Her testimony regarding her own personal observations of appellant's performance was relevant and material to support the City's defense that the decision to eliminate appellant's position was based on considerations having nothing to do with appellant's age. Zapata Davis testified about her unsuccessful efforts to train appellant to perform tasks assigned to appellant. Her testimony was relevant and material to show appellant was unwilling to learn new skills or undertake new responsibilities, and to corroborate the City's contention that it had legitimate, nondiscriminatory reasons for its decision not to employ appellant for the expanded tasks of the newly created position combining the functions of legal secretary to the city attorney with the position of secretary to the city manager. Zapata Davis's testimony also impeached appellant's testimony that she had never received any criticism of her job performance. Doane's testimony—that he had personally criticized appellant's poor work performance while appellant worked for and reported to him during his tenure as acting city manager— was similarly relevant both to the question of appellant's ability to perform her job satisfactorily, and to impeach her contrary testimony that she had never been criticized.

Appellant also attacks the admission of Haden's testimony regarding appellant's interactions with Haden's former secretary Barbara Gaither. This testimony involved two incidents in which appellant asked Gaither to perform personal financial favors for appellant which ultimately resulted in Gaither losing money under suspicious circumstances. These incidents caused Haden to question appellant's honesty and integrity. This evidence,

although hearsay as to the truth of the matters asserted, was admitted on the issue of Haden's state of mind and attitude toward appellant. The record shows that Haden's opinion about appellant and her ability to perform her job was key to Flores's decision not to offer appellant the newly combined secretarial position, which itself was to report to and be supervised by Haden. This evidence was thus extremely relevant and material to the central issue in this case: whether the City's employment action was influenced by age-based discrimination against appellant, or by other legitimate, nondiscriminatory, job-related grounds.

■ Finally, appellant objects to the admission of Cherner-Whitton's two written memoranda critical of appellant. These memoranda provided strong evidence in support of the City's contentions regarding appellant's consistently poor job performance, negative attitude, unwillingness or inability to improve, and the disastrous effect her nonperformance had on office morale and the workload of other staff members. The record shows that City Manager Flores read and considered these memoranda, discussed them with appellant, and was influenced by them in his decision not to offer her the newly created combined secretarial position. Moreover, appellant herself waived any objection to the introduction of these memoranda by previously examining Cherner-Whitton about them on direct examination during appellant's case-in-chief. (*Gallaher v. Superior Court* (1980) 103 Cal.App.3d 666, 672 [162 Cal.Rptr. 389], disapproved on other grounds in *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1078 [2 Cal.Rptr.2d 160, 820 P.2d 262].)

### STATEMENT OF DECISION

Lastly, appellant contends the trial court's statement of decision adopted an erroneous burden of proof and failed to resolve material issues of fact. She urges the judgment must be reversed and remanded either for a new trial or to correct the statement of decision. Appellant's argument boils down to a two-pronged contention that (a) the trial court erroneously considered appellant's unsatisfactory performance when the only issue properly before it was whether the decision to eliminate her position "was made in part because of [her] age"; and (b) the trial court failed to resolve the specific evidentiary issues of the identity of the individual responsible for the decision to eliminate appellant's position, and the date of that decision.

■ Upon the timely request of one of the parties in a nonjury trial, a trial court is required to render a statement of decision addressing the factual and legal bases for its decision as to each of the principal controverted issues of the case. (Code Civ. Proc., § 632.) A statement of decision need not address

all the legal and factual issues raised by the parties. Instead, it need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision. (*Haight v. Handweiler* (1988) 199 Cal.App.3d 85, 89-90 [244 Cal.Rptr. 488]; *Aviointeriors SpA v. World Airways, Inc.* (1986) 181 Cal.App.3d 908, 913-914 [226 Cal.Rptr. 527].) "[A] trial court rendering a statement of decision under . . . section 632 is required to state only ultimate rather than evidentiary facts because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them. [Citation.]" (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 599 [207 Cal.Rptr. 728]; accord, *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 524 [206 Cal.Rptr. 164, 53 A.L.R.4th 661], disapproved on other grounds in *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184-185 [83 Cal.Rptr.2d 548, 973 P.2d 527].) In other words, a trial court rendering a statement of decision is required only to set out ultimate findings rather than evidentiary ones.

There is no merit to appellant's first contention. As appellant necessarily concedes, her job performance was highly relevant to the question whether to retain her position in preference to others at a time when the City's entire work force was being cut by 25 percent because of severe economic and budget constraints. The question of appellant's job performance was relevant, material and highly probative with respect to the ultimate issue of whether the city manager's decision to eliminate appellant's position was made in any part because of her age. In its defense, the City was entitled to introduce evidence that its decisions in this respect were motivated *both* by budget constraints *and* by appellant's poor job performance, rather than by age-based discriminatory animus. Contrary to appellant's somewhat wishful formulation, the burden of proof on this issue rested entirely and solely on her. The trial court did not adopt an erroneous burden of proof or otherwise err in its statement of decision by addressing the ample evidence of appellant's poor job performance in the context of its discussion of the central issue of whether the City had discriminated against appellant because of her age.

Neither is there any merit to appellant's second contention. As discussed, the trial court's statement of decision clearly addressed the ultimate issue in this case: whether appellant had borne her burden of proving that the City's stated reasons for eliminating her position were pretextual and actually motivated by discrimination against her on account of her age. In addition to setting out its express determination that appellant failed to prove this contention, the trial court's statement of decision properly set out the

ultimate *facts* supporting that determination, and the legal basis for its decision. This is all it was required to do under Code of Civil Procedure section 632. It was *not* required to address how it resolved intermediate evidentiary conflicts, or respond point by point to the various issues posed in appellant's request for a statement of decision. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379-1380 [25 Cal.Rptr.2d 242]; *Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230 [8 Cal.Rptr.2d 293]; *Moreno v. Jessup Buena Vista Dairy* (1975) 50 Cal.App.3d 438, 447 [123 Cal.Rptr. 393].)

In any event, the statement of decision does deal with the issues appellant claims it did not address. Thus, the statement of decision specifically discusses the crisis circumstances that caused the city council to direct City Manager Flores to formulate a list of budget cut proposals; the reasons Flores himself recommended specific budget cuts, including the elimination of appellant's position; the process under which the city council considered and voted upon the city manager's proposed budget, with its attendant cuts; and the grounds upon which the trial court determined that these decisions were not motivated or influenced by appellant's age. This was sufficient.

## DISPOSITION

The judgment is affirmed.

Corrigan, J., and Parrilli, J., concurred.