Filed 10/17/23  Wolcott v. Strand CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GARY R. WOLCOTT, as Trustee, etc., Plaintiff and Appellant, v. ARLENE STRAND, Defendant and Respondent. | D082255 (Super. Ct. No. RIP1600159) |

APPEAL from a judgment of the Superior Court of Riverside County, Thomas H. Cahraman and Jacqueline C. Jackson, Judges.  Affirmed.

KJMLAW Partners, Debby S. Doitch, and Andrew D. Nutbrown for Plaintiff and Appellant.

La Quinta Law Group and Timothy L. Ewanyshyn for Defendant and Respondent.

This case involves a dispute between siblings, Gary R. Wolcott and Arlene Strand over various aspects of a trust created by their mother, Mary G. Wolcott.  The only issue on appeal is Gary's right of first refusal to purchase an approximate 3.6 acre parcel of undeveloped land held in the trust.  Gary contends the trial court erred in interpreting the terms of the

right of first refusal and finding that he failed to comply with the conditions such that the right expired. We conclude that because one of the conditions— that the sale of the parcel to Gary be "consummated, finalized, and closed within one (1) year from the date of the exercise of the right of first refusal"— did not occur, the right of first refusal expired. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. Relevant Provisions of the Trust

Mary created the Mary G. Wolcott Trust on September 25, 2003. The trust named Mary as the sole trustee. After her death, Article Six, paragraph 6(A)(2)(c) of the trust instructs the then-acting trustee to take steps to sell the parcel at issue within 30 days of her death:

> Within thirty (30) days following the death of the settlor [Mary], the then-acting trustee is directed to take all reasonable and necessary steps to place for sale the real property described as follows:
>
> [¶] . . . [¶]
>
> This real property consists of approximately 3.64 acres, and constitutes a portion of that real property known and numbered as 4780 California Avenue, Norco, California . . . .

Article Six, paragraph 6(A)(2)(d) further directs the then-acting trustee regarding the sale of the parcel and contains the terms of Gary's right of first refusal:

> The then-acting trustee is directed to undertake the sale of the real property described in Article Six, paragraph 6(A)(2)(c) above, and all actions attendant thereto under the following conditions and with the following direction:
>
> (i) Said real property is to be appraised by written appraisal within thirty (30) days of the death of the settlor

2

by two (2) independent and licensed real estate appraisers, and said written appraisals shall be sent by certified mail, return receipt requested, to settlor's son, Gary Richard Wolcott at 4780 California Avenue, Norco, California, or at such address as directed in writing by Gary Richard Wolcott, upon receipt thereof by the then-acting trustee.

(ii) Settlor's son, Gary Richard Wolcott, shall have right of first refusal to purchase said real property based upon the average value as determined by the two (2) appraisals. If Gary Richard Wolcott has not exercised his right of first refusal (by written notice to be sent by certified mail, return receipt requested, to the then-acting trustee at the address as directed by the then-acting trustee) within ninety (90) days from his receipt of the two (2) appraisals, this right of first refusal shall expire and be deemed waived, and the real property shall be placed for sale to the general public. Should Gary Richard Wolcott exercise his right of first refusal, and if the sale of said real property to Gary Richard Wolcott is not consummated, finalized, and closed within one (1) year from the date of the exercise of the right of first refusal, this right of first refusal shall expire and be deemed waived, and the real property shall be placed for sale to the general public.

Who the "then-acting trustee" was during the relevant times was a subject of dispute below. Gary does not challenge the court's ruling on this issue, but it is relevant in this appeal. The operative provision is Article Twelve, paragraph 12(A) of the second amendment of the trust, created on April 5, 2008:

> Any trustee may resign at any time. If MARY G. WOLCOTT *for any reason fails to qualify or ceases to act as trustee during her lifetime*, then settlor's son, Gary Richard Wolcott, shall act as sole trustee *during any period* that said MARY G. WOLCOTT has failed for any reason to qualify or ceased to act as trustee during her lifetime and prior to her death. . . . [¶]

3

[¶] . . . [¶]

> If MARY G. WOLCOTT *fails to qualify or ceases to act as trustee due to her death*, then Gary Richard Wolcott and Arlene Marie Wolcott Strand shall act as co-trustees. . . . (Italics added.)

### B. Pre-Litigation

On May 11, 2015, Mary suffered a sudden medical condition and became mentally incapacitated. Pursuant to the second amendment of the trust, because Mary ceased to act as trustee during her lifetime, Gary acted as sole trustee. Mary passed away six days later, on May 17, 2015.

Gary, as trustee, obtained the two appraisals required to set the sale price of the parcel. On August 11, 2015, one appraiser valued the parcel at $402,000. On September 30, 2015, a second appraiser valued the parcel at $322,000.

On October 20, 2015, Gary's attorney sent a letter to Arlene's attorney to exercise his right of first refusal: "Pursuant to Article 6(A)(2)(d)(ii) of the Mary G. Wolcott Trust, Gary Wolcott hereby exercises his right of first refusal to purchase the 3.69 acre parcel . . . ." He acknowledged the sale price and the one-year deadline: "Pursuant to the terms of the Trust, the purchase price of said parcel shall be the average of the two appraisals *i.e.*, $362,000, and Mr. Wolcott has one (1) year from today's date to consummate the purchase/sale."

Subsequently, on January 22, 2016, Gary's attorney informed Arlene's attorney that Gary would purchase the parcel by taking a loan from the trust and executing a promissory note in favor of the trust to be paid over 40 years with a 1.99% interest rate:

> As you know, on October 20, 2015, our client Gary Wolcott, exercised his option under the trust to buy the 3.69 acre

4

parcel . . . . In furtherance of his fiduciary duty of full disclosure and his obligation to keep others that may have an interest in the Trust fully informed, Mr. Wolcott is prepared to immediately consummate the purchase/sale of the property.

The terms of the sale are as follows:

Seller:    Mary B. Wolcott Trust by Gary Wolcott, Trustee;
Buyer:    Gary Wolcott, individually as a single man;
Sales Price:    $362,000 (the average of the two appraisals);
Lender:  Mary B. Wolcott Trust pursuant to Article Nine, §9(J) of the Mary B. Wolcott Trust;
Borrower:    Gary Wolcott
Security:    Deed of Trust in the principle sum of $362,000 secured by the property;
Note:    Promissory Note executed by Gary Wolcott in favor of the Mary B. Wolcott Trust
Term:    Fully amortized over 40 years, principal and interest payable monthly;
Interest Rate:  1.99% APR, simple interest.

The Grant Deed and Deed of Trust have been executed and notarized. The Promissory Note has also been signed. However, the Grant Deed has not yet been delivered to the buyer. In other words, title has not transferred and will not transfer until such time as the Grant Deed is delivered to Mr. Wolcott.

I will represent to you, and you and your clients may rely on my representation, that I will not deliver the Grant Deed to Mr. Wolcott for a period of 14 calendar days herefrom in order to address any concerns you or your clients may have regarding the terms of the transaction. Absent any contact or communication from you during this 14 day period, I will assume the terms are agreeable with your clients and will deliver the Grant Deed to Mr. Wolcott on February 9, 2016, and record the Grant Deed and Deed of Trust, thereby conveying title, perfecting the Trust's security interest in the property and completing this transaction. If, however, you have concerns, please feel

free to contact me to discuss those concerns. I am always available by telephone or email.

Additionally, my office will be filing a Petition for Instructions. As we have discussed, there may be an issue as to the disposition of the sales proceeds generated from the sale of this property. As you know, it is our position that Gary Wolcott is entitled to the sales proceeds and I believe it is your position that our client's three siblings are entitled thereto. The Petition for Instructions will seek an order which directs the Trustee of the Trust to pay the sales proceeds either to Mr. Wolcott or his siblings. I expect to have the Petition for Instructions filed by January 29, 2016.

### C. Various Petitions and Court Rulings

On February 23, 2016, Arlene filed a petition for an accounting and to determine the trustee(s). Her position was that, pursuant to the trust's terms for succession after Mary's death, the trust called for her to serve as co-trustee along with Gary. She alleged that since Mary's death, Gary had thwarted her participation as co-trustee.

One day later, on February 24, 2016, Gary filed a petition for instructions regarding distribution of the proceeds from the sale of the parcel. He first asserted that because he was trustee based on Mary's incapacity, he was to remain serving as sole trustee. He then informed the court of the parcel sale price set by the average of the two appraisals, that he exercised his right of first refusal on October 20, 2015, that there is a one-year deadline from October 20, 2015 to consummate the sale, and that he has been prepared to purchase the property by taking a loan from the trust and executing a 40-year promissory note as set forth in his January 22, 2016 letter. He sought instructions on the distribution of the sale proceeds including who is entitled to the distributions, contending that Mary intended

6

for him to be the sole beneficiary and that his three siblings, Arlene, Diane Ward, and Charles Wolcott are not entitled to any of the sale proceeds. If the court ruled that his three siblings were entitled to distributions from the sale proceeds, Gary sought instructions on whether the proceeds should be distributed monthly over 40 years or at the end of the 40 years. In response, Arlene argued that she, Diane, and Charles were beneficiaries of the trust, and that the sale of the parcel should not be withheld from them for 40 years.

On August 22, 2016, the court ruled that the terms of the trust provided that both Gary and Arlene are to serve as co-trustees following Mary's death. Based on such ruling, thereafter Gary and Arlene began to serve as co-trustees. The court also expressed, without ruling, its belief that "[r]ight of first refusal means cash, unless something says something to the contrary." It noted there is nothing in the trust about 1.99% interest or 40 years. Thus, Gary should be seeking a bank loan so that the purchase price would be paid in cash to the trust. Gary's attorney responded that those were simply proposed terms that can be negotiated.

Subsequently, on September 15, 2016, Arlene filed a petition asserting, among other things, that Gary engaged in self-dealing by issuing a loan to himself from the trust to purchase the parcel. She sought to set aside all transactions performed by Gary while erroneously acting as sole trustee, and for his removal as co-trustee. In response, on October 13, 2016, Gary asserted that no sale had taken place, the parcel was still held in the trust, and his petition sought instruction from the court on whether he could purchase the parcel by promissory note. On October 24, 2016, Arlene responded that if Gary had not yet consummated the sale, then his right of first refusal expired pursuant to the one-year deadline from the date he exercised his right on October 20, 2015.

7

On March 6, 2017, Arlene supplemented her petition, asserting that Gary was refusing to communicate with her as co-trustee and arguing that he forfeited his right of first refusal. She subsequently sought provisional relief suspending Gary as trustee pending trial. The court did so on December 1, 2017, finding that Gary was not acting appropriately in the role of co-trustee and his deposition demonstrated he had no intention of acting as a fiduciary dedicated to protecting the rights of all beneficiaries. It ordered that Arlene remain sole trustee until further court order and set the remaining issues for trial.

At trial, Gary's counsel conceded, contrary to the position Gary took in his petition, that the proceeds from selling the parcel would be distributed to Gary's three siblings, Arlene, Diane, and Charles. He also stated that Gary "understands the reasonableness or maybe unreasonableness" of the 40-year promissory note offer, and indicated Gary was willing to agree to a much shorter payment plan, which the court was surprised to hear. Gary testified he made "more than one" offer to purchase the parcel but only remembered the 40-year promissory note proposal and an offer made during mediation immediately before trial to purchase the parcel over three years. He testified that Arlene never contacted him to negotiate and never made any offer or counteroffer. He claimed he was currently willing, able, and ready to move forward with the purchase under any reasonable terms determined by the court. He also testified Arlene did not do anything as trustee.

Arlene testified she did not respond to, or counter Gary's 40-year promissory note offer because she "thought that was a joke" and "didn't feel it was serious" because "there was no way I could hold a loan for 40 years. I would be dead." Arlene did not recall Gary making any other offers. She

admitted taking no action as trustee. At the end of the trial, both parties requested a statement of decision.

On July 1, 2021, the court issued a written ruling to serve as the tentative decision pursuant to Code of Civil Procedure section 632. The court ruled that Gary did not comply with the terms of the trust with regard to his right of first refusal and he therefore no longer had such right. The court reasoned "the trust provides that the appraisals by which Gary might exercise that right were to be obtained within 30 days of settlor's death. [Mary] passed away on 05/17/15, yet the appraisals were not done until August and September of 2015. A[nd] the offer he made was essentially a non-offer as one can see from his petition of 02/24/16. Finally, Gary failed to close the sale within the 1-year period specified in Article 6(A)(2)(d)(ii). The right of first refusal is accordingly extinguished." The court also removed both Gary and Arlene as trustees.

Subsequently, Gary requested that the court address 126 purported "principal controverted issues" in its statement of decision. On November 12, 2021, the court denied the request and ruled that the July 1, 2021 tentative decision was the statement of decision and ordered the preparation of a formal judgment. The court subsequently entered judgment on August 28, 2023, and this court construed Gary's appeal from the November 12, 2021 order as being from this judgment.

## DISCUSSION

In construing trust instruments the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker. (*In re Estate of Gump* (1940) 16 Cal.2d 535, 548.) "The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (Prob. Code, § 21102, subd. (a).) "The words of an

9

instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained." (Prob. Code, § 21122.)

"The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254.) Because our resolution of this matter does not turn on a conflict in or credibility of extrinsic evidence, we apply the de novo standard of review.

As an initial matter, we dismiss Gary's argument that the court's statement of decision left controverted issues unaddressed.[1] Gary argues that because he adhered to the procedure for requesting a statement of decision, we as a reviewing court must not imply findings or resolve ambiguities on such issues to support the lower court's ruling. (Code Civ. Proc., § 634) However, our decision does not rely on any implied findings unaddressed in the statement of decision, but rather express findings of ultimate facts.

Upon the timely request of one of the parties in a nonjury trial, a trial court is required to render a statement of decision addressing the factual and legal bases for its decision as to each principal controverted issue of the case. (Code Civ. Proc., § 632.) A statement of decision need not address all the legal and factual issues raised by the parties. Instead, it needs to state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision. A trial court rendering a statement of decision is required only to set out

---

[1] To the extent Gary also argues the court did not issue a statement of decision at all, the record shows that on November 12, 2021, the court ruled that its written tentative decision dated July 1, 2021, became the statement of decision pursuant to Code of Civil Procedure section 632.

10

ultimate findings rather than evidentiary ones because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 (*Muzquiz*).)

Here, the court's statement of decision addressed the principal issue in the case that is on appeal: whether Gary's right of first refusal expired. In addition to determining that it had expired, the trial court's statement of decision set out the legal basis and the ultimate facts supporting that determination. The court found that Gary did not comply with the terms of the trust because the appraisals were not completed within 30 days of Mary's death and Gary failed to close the sale within the one-year period specified in the trust. This is all the court was required to do under Code of Civil Procedure section 632. It was *not* required to respond point by point to the various issues posed in Gary's written request for a statement of decision. (See *Muzquiz*, *supra*, 79 Cal.App.4th at p. 1126.)

Turning to Gary's challenges to the court's grounds for determining that his right of first refusal expired, he argues the right was not conditioned on obtaining appraisals within 30 days of Mary's death and that he was only required to provide written notice to exercise his right within 60 days of the appraisals. We agree that obtaining appraisals within 30 days was not a condition precedent because there is no clear intention in the trust that makes Gary's right of first refusal dependent on the timely satisfaction of this direction. (*In re Estate of Rider* (1926) 199 Cal. 724, 738 [" 'The law favors the vesting of interests, and every interest will be presumed to be vested, unless a contrary intention is clearly manifest.' "].) Therefore, Gary's right of first refusal vested upon Mary's death. However, we disagree that his only obligation was to exercise that right by giving timely written notice. Instead,

11

there were two conditions subsequent—one of which is the sole responsibility of Gary; the other of which is the joint responsibility of Gary and the trustee(s).

Gary's responsibility alone was to give written notice of his election to exercise his right of first refusal, within 90 days of receiving the two appraisals. He properly gave written notice on October 20, 2015. As such, we agree with Gary that he satisfied this condition subsequent.

The second condition subsequent required the sale to Gary to be "consummated, finalized, and closed within one (1) year from the date of the exercise of the right of first refusal." There is no dispute this condition was not satisfied. Moreover, Gary concedes it was a joint obligation of his and the trustee(s). Nonetheless, citing *Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515 (*Bill*), Gary contends Arlene as trustee was required to make an offer to him for the sale of the parcel. This argument fails because Gary was the sole trustee until August 22, 2016, when the court ruled that he and Arlene were co-trustees. This was just two months prior to the one-year deadline to close the sale, by October 20, 2016. Moreover, even if Arlene had the power to act as co-trustee prior to August 22, or to the extent Gary argues she should have made him an offer in between August 22 and October 20, 2016, Gary misapplies the term "right of first refusal" in the context of this trust.

"The particular facts and circumstances that give effect to the right [of first refusal] depend on the particular terms of the contract for the right." (*Campbell v. Alger* (1999) 71 Cal.App.4th 200, 207.) In *Bill*, the court explained that a preemptive purchase right is a grant from a landowner that gives the grantee the first opportunity to purchase the property if the landowner decides to sell. A preemptive purchase right takes one of two

12

forms, a right of first refusal or a right of first offer.  Under a right of first refusal, the landowner seller normally first procures an offer to purchase from a third party on terms acceptable to the seller.  The seller must then present the third party offer to the grantee of the right of first refusal who, in turn, has a limited period to either match the offer or reject it.  (*Bill, supra,* 157 Cal.App.4th at p. 1516.)

Here, Gary had the right of first refusal to purchase the parcel at the price set by the average of the two appraisals.  Thus, the trustee(s) did not need to procure a third party offer to present to Gary to either match or reject or make any offer to Gary because the sale price was already set forth by the trust.  Gary could either accept or reject it.  He accepted it by his October 20, 2015 letter.  The condition subsequent at issue—closing the sale within one year—has nothing to do with the trustee(s) making Gary an offer.  But it did require Gary and the trustee(s) to jointly enter into good faith negotiation to consummate the sale.  (See *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1179.)

To this point, Gary contends he took every reasonable action to fulfill the condition of closing the sale within one year.  He argues Arlene as trustee abrogated or evaded her duty to negotiate with him, even though she was only empowered to act as co-trustee starting August 22, 2016.  Gary also argues that he as trustee was not at liberty to unilaterally consummate, finalize, and close the sale to himself.  He contends he had no recourse but to file his petition for instructions to obtain court approval of his proposed sale terms, which caused delay and was not ruled on until after the one-year deadline.  He also points to the fact that on June 27, 2016, the court prohibited him from transferring any trust property.  Based on this, he

13

argues the condition should have been excused under the doctrine of impossibility.  These arguments are unpersuasive.

Regardless of who the trustee was, Gary as grantee of the right of first refusal had the joint obligation to close the sale within one year and there is no evidence he tried to do so.  To the contrary, the only evidence of offers he made were the original 40-year promissory note and apparently an offer that he made just before trial (far beyond the one-year deadline) to purchase the parcel over three years.  Along those same lines, his argument that his petition established he was "ready, willing, and able to consummate, finalize, and close the sale" and his argument that the court should have tolled the one-year deadline pending resolution of his petition are disingenuous because his petition sought approval of the 40-year promissory note transaction.  Regardless of the delay pending the court's ruling on his petition, he was pursuing a transaction that he knew would never close within one year and he continued to pursue it until the first day of trial when he conceded it was unreasonable.  We agree with the court that this was "essentially a non-offer" in the face of the condition subsequent to consummate, finalize, and close the sale within one year.

Finally, it was not impossible to consummate, finalize, and close a sale within the one-year deadline.  Gary could have, within one year, obtained a loan from a bank and paid the trust in full and there is no indication the court would not have allowed this even while his petition was pending.  His argument that the court prohibited the transfer of any trust property fails because the court only temporarily restrained the parties from transferring trust property for two months from June 27, 2016, pending its decision on August 22, 2016 that Gary and Arlene were co-trustees.  Although Gary contends Arlene was unamenable to negotiating, and she testified that she

14

did not take the 40-year promissory note proposal seriously, there is no indication she would not have considered reasonable terms. Gary and Arlene both blame each other for not making an offer acceptable to the other, but the reality is that Gary had the joint obligation to close the sale within one year and this condition subsequent did not occur. He claims the trial court's decision is against public policy because it indicates he should have unilaterally transferred the property to himself then ask forgiveness, but as we have discussed, there were other ways to handle the matter.

### DISPOSITION

The August 28, 2023 judgment is affirmed. Arlene is entitled to costs on appeal.

CASTILLO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

BUCHANAN, J.

15